# UNITED STATES DISTRICT COURT
# FOR THE NORTHER DISTRICT OF GEORGIA
# ATLANTA DIVISION

**SAFEGUARD LABS, LLC**

      Plaintiff

      v.

**MASH ENTERPRISE, LLC**

      Defendant

**Case No. _____**

**JURY TRIAL DEMANDED**

## SAFEGUARD LABS'S ORIGINAL COMPLAINT
## FOR TRADEMARK INFRINGEMENT AND COUNTERFEITING

Plaintiff Safeguard Labs, LLC ("Plaintiff" or "Safeguard"), by and through its undersigned attorneys, brings this civil action against Defendant MASH Enterprise, LLC ("Defendant" or "MASH"). Plaintiff respectfully shows the Court as follows:

## I.    NATURE OF THE ACTION

1.    This is an action for trademark infringement and for the sale of counterfeit goods under Section 32 of the Lanham Act (15 U.S.C. § 1114), for trade dress infringement and false designation of origin under Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)), and for violations of Georgia law, including deceptive trade practices and unfair competition, against persons who buy, distribute, advertise and sell infringing and counterfeit products using identical or nearly identical copies of Safeguard's registered UPASS® trademarks and UPASS Trade Dress packaging,

as well as Safeguard's common law trademarks for "Safeguard Laboratories" and "HOT SACKS" and common law Trade Dress for "HOT SACKS," without Safeguard's authorization (hereafter, "Infringing Products" or "Counterfeit Goods").

2.    Safeguard manufactures and distributes high-quality, authentic UPASS Products (as defined herein) and owns the registered and common-law trademarks and common-law trade dress (the "UPASS and HOT SACKS Trademarks" and "UPASS and HOT SACKS Trade Dress," respectively) (collectively, the "Marks") that appear on all authentic UPASS Products authorized for sale in the United States.

3.    Defendant is buying, advertising, promoting, and selling Counterfeit Goods using Safeguard's UPASS trademarks, UPASS Trade Dress, Safeguard Labs trademark, HOT SACKS trademark, and HOT SACKS Trade Dress without authorization on products that Safeguard does not manufacture or distribute.

4.    Safeguard cannot verify the ingredients or chemical makeup of the Counterfeit Goods, nor can it verify the conditions under which these goods were manufactured, stored, and sold; as a result, Safeguard has effectively lost the power to control the quality and safety of counterfeit products sold under the Marks, causing immediate, substantial, and irreparable harm to its reputation.

5.    As a result of Defendant's infringing activities, the ability to control the quality of products sold under its Marks, including those sold under the UPASS® brand, has been seriously compromised.

## II.  <u>JURISDICTION AND VENUE</u>

6.    Safeguard brings this lawsuit for (1) counterfeiting and trademark infringement, in violation of Section 32 of the Lanham Act (15 U.S.C. § 1114); (2) trademark and trade dress infringement, false designation of origin and unfair competition in violation of Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)); and (3) state law claims, including deceptive trade practices and unfair competition, under Georgia law.  Safeguard seeks remedies available pursuant to 15 U.S.C. §§ 1114, 1116, and 1125(a).

7.    This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338.  This Court also has supplemental jurisdiction over Safeguard's state-law claims pursuant to 28 U.S.C. § 1367(a), as it arises from the same nucleus of operative facts as the federal claims.

8.    Defendant MASH is subject to personal jurisdiction in this judicial district because it resides in this district and has advertised and sold Counterfeit Goods in Georgia and in or from this judicial district.

9.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant is engaged in infringing and counterfeiting activities within this district by advertising, offering to sell, selling, and distributing Counterfeit Goods to consumers in Texas.

## III.    **THE PARTIES**

**A.    Plaintiff Safeguard Labs, LLC**

10.    Safeguard Labs, LLC ("Safeguard") is a Nevada limited liability company with an address at 2761 N. Lamb Blvd., Las Vegas, NV 89115.

11.    Safeguard owns and exclusively distributes UPASS-branded products throughout the United States, selling primarily to wholesalers, who then re-sell the products to retailers.

12.    Safeguard is the owner of all right, title, and interest in and to certain common law and federally registered marks and trade dress, including:

    a.  the federally registered UPASS® word mark (Registration Nos. 7,251,516 and 7,033,644) (collectively, the "UPASS Trademarks");

    b.  Safeguard Labs trademark (common law);

    c.  HOT SACKS trademark (common law);

    d.  associated UPASS Trade Dress; and

    e.  associated HOT SACKS Trade Dress.

Safeguard also owns the goodwill associated with all such marks and trade dress (collectively, the "Marks"), which are used continuously in commerce in connection with the sale of simulated urine kits and related products (sometimes referred to as the "Goods").

**B.    Defendant MASH Enterprise, LLC**

13.    Defendant MASH Enterprise, LLC ("Defendant" or "MASH") is a Georgia limited liability company with a place of business at 3263 Bridge Walk Dr., Lawrenceville, GA 30044.    Defendant is involved in the willful purchase, distribution, and sale of Counterfeit Goods in the State of Georgia, including in this judicial district.  Defendant may be served by serving its registered agent, Mashkoor Hassan, at the address provided to the Georgia Secretary of State, 3263 Bridge Walk Dr., Lawrenceville, GA 3004, or wherever he may be found.

## IV.    FACTUAL BACKGROUND

**A.    Safeguard sells authentic UPASS-branded products.**

14.    Safeguard Labs manufactures, packages, markets, promotes, advertises, and sells dependable, high-quality, synthetic urine—under the brand name of UPASS— for use in educational contexts, research and development, and clinical laboratory testing.  Safeguard's goal is to create simulated urine products that mimic real human urine in both composition and appearance.  Over the years, Safeguard has stayed ahead of the industry by continually refining its lab-tested formula, ensuring optimal performance, precision, and reliability in every batch.

15.    Safeguard's mission is to create confidence in its product by making it easy to use, while supporting individuals, companies, and institutions in meeting their testing and training needs without having to handle real urine.  Safeguard places

a premium on reliability; therefore, each UPASS kit is manufactured and packaged with meticulous attention to detail.  Whether for calibrating diagnostic equipment, simulating human samples for research, or teaching laboratory techniques, UPASS simulated urine provides an accurate and consistent solution.  It is regarded by many as a dependable simulated urine product.

16.    To maintain its reputation for quality and to protect the corporate goodwill it has built up over many years, Safeguard invests in research and development.    By collaborating with experienced technicians and monitoring evolving industry standards, the company ensures its simulated urine remains at the forefront of innovation.  The UPASS formula includes urea, creatinine, pH-balanced levels, and other key compounds that replicate the chemical properties of human urine.  These features allow UPASS to perform reliably across a wide range of testing, training, and educational scenarios, providing accurate and realistic results every time.  If counterfeit versions of UPASS products are sold without Safeguard's knowledge or oversight, the inability to ensure authenticity can lead to customer confusion, substandard performance, and serious brand damage—harms that cannot be remedied by money alone.

17.    Safeguard's  UPASS®  Trademarks,  including  Registration  Nos. 7,251,516 (Ex. A) and 7,033,644 (Ex. B), are registered on the U.S. Principal Register.  Safeguard also has common-law rights in "Safeguard Labs" and "Hot

Sacks." Safeguard uses these Marks, along with unique and distinctive UPASS and

HOT SACKS packaging, to identify its genuine simulated urine products:



18.    The product box includes a 3-oz. bottle with temperature strip and HOT

SACKS hand warmers:



19.    As shown, Safeguard uses distinctive, non-functional trade dress

features for its UPASS packaging.  The Trade Dress of the UPASS box includes a

color scheme of red, white, blue, and black.  The packaging includes, for example, the stylized UPASS word mark and logo, which uses all capital letters, with a larger black "U" adjacent a smaller red "PASS" surrounded by red lines on three sides, all of which are placed at a slight angle against the background of a white legal pad, with a vertical red line forming a margin on the left-hand side of the "legal pad" and horizontal blue lines forming the lines of the "legal pad" background. Approximately the bottom third of the box includes a blue background "covering" the legal pad (the right-hand portion of which slopes concavely upward), against which white letters describe attributes of the simulated urine.  The box includes additional red accents, including a red triangle in the top left-hand corner (where the 3 oz. volume size of the bottle is advertised) and a red bar across the bottom (where the intended uses of the simulated urine are listed).  The top right-hand corner includes the stylized "Safeguard LABORATORIES" word mark and logo, in which "Safeguard" appears in black letters, except that the capital "S" appears in white against a green background in the shape of a 3-sided cross or "+" sign.  The word "Safeguard" is shown in larger font, while "LABORATORIES" appears in a much smaller font. Collectively, the aforementioned constitute "Safeguard's UPASS Trade Dress."

20.    The UPASS box includes two "HOT SACKS"-branded hand warmers:

 

21.    As shown, Safeguard uses distinctive, non-functional Trade Dress features for its HOT SACKS packaging.  The HOT SACKS packaging includes the stylized SMALL CAPS wording of HOT SACKS, where the letter "O" is in the shape of a handprint.  The Trade Dress includes a black, white, yellow, orange, and red color scheme.  The front of the package includes a portion of a yellow, orange, and red sun-like object, suggestive of heat from the sun, set against a black background, suggestive of a cold void.  The back of the package likewise includes the stylized wording of HOT SACKS, where the letter "O" is in the shape of a handprint, against a black, yellow, orange, and red background, suggestive of heat from the sun or from an active volcano and, below that, uses the word mark HOT SACKS.  Collectively, the aforementioned constitute "Safeguard's HOT SACKS Trade Dress."

22.    The Marks have been used continuously and exclusively by Safeguard on, and in connection with, its UPASS products, since at least 2014—long before the first registration issued on April 25, 2023—in commerce throughout the United States.  Safeguard sells these authentic products under strict quality controls, including assigned lot numbers, expiration dates, and verifiable manufacturing

conditions.

23.    Safeguard distributes its products primarily to wholesalers, who then sell to retailers throughout the United States.  In turn, retailers offer the authentic UPASS goods to consumers.  Over the years, some circles have developed a cult-like following for the UPASS brand, trusting only UPASS goods for their research or training applications.

**B.    Defendant MASH sells Counterfeit Goods.**

24.    Defendant MASH, without permission, authorization, or license, uses the Marks and Trade Dress packaging that is identical or nearly identical to Safeguard's UPASS product.  The Counterfeit Goods infringe Safeguard's federally registered "UPASS" word mark, as well as its common law Trade Dress in the distinctive packaging:



25.    Defendant's Counterfeit Goods infringe Safeguard's common law trademark rights in the "Safeguard LABORATORIES" name and logo:



26.    Defendant's Counterfeit Goods also include the HOT SACKS-branded hand warmers, in violation of Safeguard's common law trademark and Trade Dress rights:



27.    These Counterfeit Goods are falsely and unlawfully branded using Safeguard's UPASS Trademarks and Trade Dress and its HOT SACKS trademark and HOT SACKS Trade Dress without Safeguard's authorization.

28.    Defendant's Counterfeit Goods do not originate with Safeguard, are not made under Safeguard's supervision, and are not authorized to carry Safeguard's Marks or distinctive Trade Dress.  Consequently, Defendant's infringing acts deprive Safeguard of its right to control the quality, reliability, and safety of goods offered under its brand.

29.    In contrast to Safeguard's authentic UPASS products, Defendant's Counterfeit Goods are not subject to any known quality control standards, lot number tracking, or verifiable storage conditions.  Safeguard cannot test or verify whether these Counterfeit Goods use the correct chemical composition, list a valid expiration date, or are safe for the research, laboratory testing, and educational purposes for which they are intended.

**C.    Defendant's sale of Counterfeit Goods causes substantial and irreparable harm to Safeguard.**

30.    By advertising and selling Counterfeit Goods bearing Safeguard's Marks, Defendant trades upon and unlawfully benefits from Safeguard's goodwill and brand recognition associated with UPASS, Safeguard Laboratories, and HOT SACKS brands.

31.    Defendant intends to cause consumers and potential customers to believe these Counterfeit Goods are genuine and associated with Safeguard when, in fact, they are not.  If a consumer receives a substandard or defective counterfeit product, Safeguard's reputation for quality and reliability is irreparably damaged.

32.    Consumers deceived, by these Counterfeit Goods are likely to think less favorably of Safeguard, harming Safeguard's brand value, reputation, and goodwill.  As a direct and proximate result, Safeguard has suffered and will continue to suffer actual damages (lost sales, revenues, and profits) and irreparable harm to its brand, for which there is no adequate remedy at law.

33.     Unless enjoined by this Court, Defendant will continue to infringe upon Safeguard's valuable Marks and to sell Counterfeit Goods, causing ongoing and irreparable harm.

## V.     CLAIMS AGAINST DEFENDANT

## COUNT 1 - FEDERAL TRADEMARK INFRINGEMENT AND SALE OF COUNTERFEIT GOODS (15 U.S.C. § 1114)

34.     Safeguard realleges and incorporates by reference each of the above paragraphs as though fully set forth herein.

35.     In violation of 15 U.S.C. § 1114, Defendant uses in commerce, without Safeguard's consent, a reproduction, counterfeit, copy, or colorable imitation of one or more of the registered UPASS® Trademarks, on and in connection with the sale, offering for sale, distribution, or advertising of the Counterfeit Goods, which is likely to cause confusion, mistake, or deception among consumers.

36.     At least since the date of service of this Complaint, Defendant's continued actions constitute willful infringement of Safeguard's exclusive rights in and to the UPASS® Trademarks, which are registered on the U.S. Principal Register and which Safeguard owns and has the exclusive right to use and enforce in the United States.

37.     As a direct and proximate result of Defendant's willful misconduct, Safeguard has suffered economic damages and irreparable harm to the value and goodwill associated with the UPASS product line and the UPASS® Trademarks, as

well as irreparable harm to Safeguard's reputation.

38.    Unless Defendant is restrained and enjoined from advertising, promoting, buying, selling, and distributing the Counterfeit Goods, or otherwise infringing the UPASS Marks, Safeguard will continue to be irreparably harmed.

39.    As a direct and proximate result of Defendant's willful misconduct, Defendant has earned illicit profits in amounts not yet known but to be determined at trial.

40.    Safeguard has no remedy at law that could compensate it for the continued, irreparable harm caused by Defendant's purchase, sale, and other distribution of the Counterfeit Goods.  Accordingly, Safeguard seeks, and is entitled to, preliminary and permanent injunctive relief, as well as orders for the seizure and/or destruction of the Counterfeit Goods.

41.    Safeguard is also entitled to all remedies available under 15 U.S.C. §§ 1114, 1116, and 1117, including lost profits, treble damages, statutory damages and penalties, disgorgement damages, enhanced damages, and/or reasonable attorneys' fees, in amounts to be determined at trial, as this is an exceptional case per 15 U.S.C. § 1117(a).

## COUNT 2 - FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION (15 U.S.C. § 1125(a))

42.    Safeguard realleges and incorporates by reference each of the above paragraphs as though fully set forth herein.

43.     In violation of 15 U.S.C. § 1125(a), and in connection with its purchase, sale, and other distribution of the Counterfeit Goods, Defendant has used in commerce a word, term, name, symbol, or device, or a combination thereof, or a false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which was and is likely to cause confusion or to cause mistake, or to deceive consumers as to an affiliation, connection, or association with Safeguard, or to deceive consumers as to approval by Safeguard.

44.     On information and belief, Defendant willfully sold Counterfeit Goods bearing unauthorized versions of the Safeguard trademarks, UPASS® Trademarks, UPASS Trade Dress, Hot Sacks Trademarks, Hot Sacks Trade Dress, and other Marks, and falsely designated the Counterfeit Goods as being authentic Safeguard products, when in fact they are not.

45.     Defendant's unauthorized acts have been undertaken to compete unfairly with Safeguard; to trade on Safeguard's reputation and goodwill by causing consumer confusion and mistake; and to deceive the public into believing the Counterfeit Goods are associated with, sponsored by, or approved by Safeguard, when they are not.

46.     As direct and proximate result of Defendant's willful misconduct, Safeguard has suffered, and continues to suffer, economic damages and irreparable harm to the value and goodwill associated with its Marks, as well as harm to its

reputation and brand value.

47.     Unless Defendant is restrained and enjoined, Safeguard will continue to be economically damaged and irreparably harmed.

48.     Defendant has earned illicit profits in amounts not yet known but to be determined at trial.   Safeguard is entitled to damages, treble damages, and/or reasonable attorneys' fees, in amounts not yet known, but to be determined at trial, and Safeguard is entitled to recover its damages, including treble damages, and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a).

## COUNT 3 – VIOLATIONS OF THE GEORGIA DECEPTIVE TRADE PRACTICES ACT
### O.C.G.A. § 10-1-370 *et seq.*

49.     Plaintiff incorporates by reference each of the preceding paragraphs as if set forth herein.

50.     Under Georgia's Deceptive Trade Practices Act ("GUDTPA"), it is a deceptive trade practice if a person, among other things, in the course of that person's business, vocation, or occupation, passes off goods or services as those of another, causes likelihood of confusion or misunderstanding as to another's affiliation, connection, association, or certification, falsely represents that goods or services have a particular sponsorship, approval, status, affiliation, or connection, or engages in any other conduct that similarly creates a likelihood of confusion or misunderstanding.

51.     Defendant's continued use of the Marks has caused, is causing, and will likely continue to cause a likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of the goods and services Defendant provides, causing a likelihood of confusion as to Defendant's affiliation, connection, or association with Safeguard, and otherwise damaging the public.  Defendant's conduct constitutes unfair and deceptive acts or practices in the course of a business, trade, or commerce in violation of O.C.G.A. §§ 10-1-370 to 10-1-375.

52.     Defendant's actions have caused, and will continue to cause, irreparable harm to Plaintiff as a result of such activities, and Plaintiff has suffered substantial damages, as well as the continuing loss of goodwill and reputation established by Plaintiff in the Marks.

53.     Plaintiff is therefore entitled to injunctive relief, to an award of its actual damages, and to an accounting of any profits enjoyed by Defendant as a result of its unlawful conduct.

## COUNT 4 – VIOLATIONS OF THE GEORGIA UNFAIR COMPETITION STATUTE
### O.C.G.A. § 23-2-55

54.     Plaintiff incorporates by reference each of the preceding paragraphs as if set forth herein.

55.     By its unauthorized and unlawful use of the Marks, Defendant has attempted to encroach upon the business of Plaintiff by the use of similar trademarks, names, or devices, with the intention of deceiving and misleading the public,

56.     Defendant intended to deceive and mislead the general consuming public when it sold the Counterfeit Goods, and it knew that Plaintiff had long established prior rights in the Marks.

57.     Defendant's unauthorized use of the Marks falsely tends to induce buyers to believe that they are purchasing goods and services from Plaintiff or one of its affiliates or authorized distributors and unfairly allows Defendant to arrogate for itself Plaintiff's goodwill and rights in the Marks, which is likely to confuse, deceive, and injure the public.

58.     Plaintiff has been, and continues to be, irreparably damaged by Defendant's actions, and it has no adequate remedy at law.

59.     Unless this Court enjoins Defendant's use of the Marks in violation of O.C.G.A. § 23-2-55, Defendant's unlawful actions will continue to injure the public and cause Plaintiff irreparable injury.

60.     Defendant's conduct has caused, and is likely to continue causing, substantial injury to the public and to Plaintiff.  Therefore, Plaintiff is entitled to injunctive relief and to recover Defendant's profits, actual damages, enhanced

profits and damages, punitive damages, costs, and reasonable attorneys' fees under Georgia law.

## COUNT 5 – COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

61.    Plaintiff incorporates by reference each of the preceding paragraphs as if set forth herein.

62.    Safeguard has common law rights in the Mark in Georgia, where Plaintiff does business.

63.    Defendant's use of the Marks, in connection with its synthetic urine product, is likely to cause confusion, to cause mistake, and to deceive the public and consumers as to the source or origin of its goods.

64.    Defendant has acted, and continues to act, willfully, deliberately, and with full knowledge of Plaintiff's use of and common law rights to the Marks and without regard to the likelihood of confusion of the public created by Defendant's actions.

65.    Defendant's unauthorized use of the Marks has caused and is likely to cause confusion, mistake, and deception as to the affiliation, connection, or association with, or sponsorship, endorsement, or approval by, Plaintiff.

66.    Defendant's unlawful and willful use has resulted in Defendant's profit and Plaintiff's damage.

67.    Unless and until Defendant is enjoined from its unlawful conduct, Plaintiff will continue to suffer irreparable harm for which it has no adequate remedy at law.

## VI.    <u>NOTICE OF REQUIREMENT OF LITIGATION HOLD</u>

68.    Defendant is hereby notified that it is legally obligated to locate, preserve, and maintain all records, notes, drawings, documents, data, communications, materials, electronic recordings, audio/video/photographic recordings, and digital files, including edited and unedited or "raw" source material, and other information and tangible things that Defendant knows, or reasonably should know, may be relevant to the Counterfeit Goods or to actual or potential claims, counterclaims, defenses, and/or damages by any party or potential party in this lawsuit, whether created or residing in hard copy form or in the form of electronically stored information (hereafter, "Potential Evidence"). As used above, the phrase "electronically stored information" includes, without limitation: computer files (and file fragments), e-mail (both sent and received, whether internally or externally), information concerning e-mail (including but not limited to logs of e-mail history and usage, header information, and deleted but recoverable e-mails), text files (including drafts, revisions, and active or deleted word processing documents), instant messages, audio recordings and files, video footage and files, audio files, photographic footage and files, spreadsheets, databases, calendars,

telephone logs, contact manager information, internet usage files, and all other information created, received, or maintained on any and all electronic and/or digital forms, sources and media, including, without limitation, any and all hard disks, removable media, peripheral computer or electronic storage devices, laptop computers, mobile phones, personal data assistant devices, Blackberry devices, iPhones, video cameras and still cameras, and any and all other locations where electronic data is stored. These sources may also include any personal electronic, digital, and storage devices of Defendant's agents, resellers, or employees, if Defendant's electronically stored information resides there.

69.    Defendant is hereby further notified and forewarned that any alteration, destruction, negligent loss, or unavailability, by act or omission, of any Potential Evidence, including the destruction or concealment of Counterfeit Goods without the Court's express permission, may result in damages or a legal presumption by the Court and/or jury that the Potential Evidence is not favorable to Defendant's claims and/or defenses. To avoid such a result, Defendant's preservation duties include, but are not limited to, the requirement that Defendant immediately notify its agents and employees to halt and/or supervise the auto-delete functions of Defendant's electronic systems and refrain from deleting Potential Evidence, either manually or through a policy of periodic deletion.

## VII.  **PRAYER FOR RELIEF**

Plaintiff Safeguard Labs, LLC requests that this Court enter judgment in its favor and grant relief as follows:

1.   judgment that Defendant has committed trademark and trade dress infringement, including infringement of the following:

   a. federally registered UPASS trademarks (Registration Nos. 7,251,516 and 7,033,644);

   b. Safeguard Labs word mark and logo/design (common law);

   c. HOT SACKS word mark and logo/design (common law);

   d. UPASS box design and packaging (common law Trade Dress);

   e. HOT SACKS package design and packaging (common law Trade Dress).

2.   judgment that Defendant has willfully sold and distributed counterfeit goods;

3.   judgment that Defendant is liable for false designation of origin, false descriptions, and unfair competition;

4.   judgment that Defendant is liable for violations of the Deceptive Trade Practices Act, unfair competition, and trademark infringement under Georgia law.

5.   an accounting;

6.     all actual, treble, and exemplary damages suffered by Safeguard Labs, including lost sales and profits, and any other damages permitted under the Lanham Act or Georgia law;

7.     disgorgement of all Defendant's profits related to the infringement or the Counterfeit Goods;

8.     in the alternative, statutory damages of up to $2 million per counterfeit mark, per type of goods, for willful counterfeiting under 15 U.S.C. § 1117(c), or such additional amounts the Court deems just; or up to $4 million if multiple infringed marks and multiple types of goods are established;

9.     an order allowing for the seizure of all counterfeit goods and/or an order that the infringing and Counterfeit Goods be surrendered for destruction;

10.    preliminary and permanent injunctive relief, enjoining Defendant from further infringement and counterfeiting;

11.    judgment that this is an exceptional case and an award of reasonable and necessary attorney's fees as provided by law, pursuant to 15 U.S.C. § 1117(a) and any other statutory or equitable basis;

12.    costs, including taxable costs;

13.    pre- and post-judgment interest at the highest allowable rates; and

14.    all other relief the Court deems just and proper.

## VIII.  <u>JURY DEMAND</u>

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury on all issues so triable.

Dated: May 2, 2025                     Respectfully Submitted,

<u>/s/ Daniel A. Kent</u>
Daniel A. Kent
Georgia Bar No. 415110
dankent@kentrisley.com
Tel:  (404) 585-4214
Fax:  (404) 829-2412

**KENT & RISLEY LLC**
5755 N Point Pkwy Ste 57
Alpharetta, GA 30022

David A. Skeels
Texas State Bar No. 24041925
Email: DSkeels@whitakerchalk.com
*Pro hac vice application forthcoming*

Decker A. Cammack
Texas State Bar No. 24036311
Email: DCammack@whitakerchalk.com
*Pro hac vice application forthcoming*

Richard L. Schwartz
Texas State Bar No. 17869500
Email: RSchwartz@whitakerchalk.com
*Pro hac vice application forthcoming*

**WHITAKER CHALK SWINDLE & SCHWARTZ PLLC**
301 Commerce St., Suite 3500

Fort Worth, Texas  76102
817.878.0500 Telephone
817.878.0501 Facsimile

**ATTORNEYS FOR PLAINTIFF
SAFEGUARD LABS, LLC**