IN THE UNITED STATES DISTRICT COURT
FOR THE NOTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| SAFEGUARD LABS, LLC, | |
| Plaintiff, | |
| v. | C.A. No. 1:25-cv-02456-ELR |
| MASH ENTERPRISE, LLC; | |
| Defendant. | |

## **Answer, Affirmative Defenses, and Counterclaim**

### **Answer**

Responding to the numbered Paragraphs in Plaintiff's Complaint (Doc. 1), Defendant Mash Enterprise, LLC answers as follows:

1.     Paragraph 1 is Plaintiff's characterization of its claim, to which no factual response is required.

2.     Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations made in ¶ 2, including, particularly, the alleged "quality" and authenticity of Plaintiff's claimed products and whether Plaintiff manufactures and packages the claimed products.

1

3.    Denied.

4.    Denied, as Defendant lacks knowledge or information of what Plaintiff contends are "Counterfeit Goods" sufficient to form a belief about the truth of the allegations made in ¶ 4.

5.    Denied, as Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations made in ¶ 5, including, specifically, as to the quality of Plaintiff's claimed products, and denies selling products using the trademark claimed in ¶ 5.

## JURISDICTION AND VENUE

6.    Paragraph 6 is Plaintiff's characterization of the statutory bases for its claims, to which no factual response is required.

7.    Defendant admits that this court has subject matter jurisdiction of the Federal trademark claims described in ¶ 7, and, if the Complaint properly asserts Georgia state law claims, that it would have supplemental jurisdiction if such claims arise from the same nucleus of operative facts.

8.    Defendant admits to personal jurisdiction in this District and denies the allegation that it "advertised and sold Counterfeit Goods" in Georgia and/or this District.

9.    Defendant admits that, if the claims made were true, venue would be proper in this District and denies that advertising or sales to consumers in Texas establish venue in Georgia or this District.

### III.   THE PARTIES

### PLAINTIFF

10.    Admitted that an LLC bearing that name is registered in Nevada. Defendant avers that the Plaintiff LLC appears to use a name, "Safeguard Laboratories," on its packaging that may dilute or tarnish a trademark or name associated with Safeguard Laboratories, LLC, a Texas entity (https://safeguard-labs.com/), and that its inclusion of the word "Safeguard" on its packaging may dilute, tarnish or infringe on trademarks or trade names used by Merck (NYSE:MRK) and/or Proctor & Gamble (NYSE: PG).

11.    Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations made in ¶ 11.

12.    Defendant admits, as alleged at ¶ 12(a), that a Nevada LLC entity appears to own the alleged trademarks and lacks knowledge or information sufficient to form a belief about the truth of the allegations made in ¶ 12(b)-(e) and the remaining allegations in the Paragraph.

## **DEFENDANT**

13.    Defendant admits that it is a Georgia LLC with a principal place of business within the Northern District of Georgia. Paragraph 13 is otherwise denied.

## IV. **FACTUAL BACKGROUND**

14.    Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations made in ¶ 14, except to deny that Plaintiff markets its product for the uses claimed.

15.    Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations made in ¶ 15. That said, Defendant denies that Plaintiff markets its product for the purposes described, and instead marketis the UPASS$^{tm}$ product to roadside convenience stores and 'head' or smoke shops for consumer use (i.e., "you pass!") in avoiding positive urinalysis drug testing results.

16.    Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations made in ¶ 16.

17.    Defendant admits the first sentence of ¶ 17 and denies the remaining allegations in ¶ 17.

18.    Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations made in ¶ 18.

19.    Denied, particularly as to ¶ 19's assertion of legal conclusions. Plaintiff's claimed "UPASS™" trademark or trade dress is generic or merely descriptive and lacks distinctive character.

20.    Denied, as Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations made in ¶ 20.

21.    Denied, particularly as to ¶ 21's assertion of legal conclusions. Plaintiff's claimed "Hot Sacks" trade dress is either generic or merely descriptive and lacks distinctive character.

22.    Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations made in ¶ 22, except that Plaintiff's USPTO submissions indicate that the UPASS and Hot Sacks descriptive terms and packaging, if used at all before 2021, were owned and used by PhD Marketing, Inc., a different entity.

23.    Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations made in ¶ 23.

24.    Denied. Contrary to the inference made by ¶ 24, the image included in the Paragraph appears to be of what *Plaintiff* claims to sell

(compare Complaint ¶ 17), and not of anything 'counterfeit' Plaintiff claims *Defendant* sells.

25.    Denied. Contrary to the inference made by ¶ 25, the image included in the Paragraph appears to be of a bar code from what *Plaintiff* claims to sell, and not of anything 'counterfeit' Plaintiff claims *Defendant* sells.

26.    Denied. Contrary to the inference made by ¶ 26, the image included in the Paragraph appears to be of something contained inside the packaging of something which *Plaintiff* claims to sell (compare Complaint ¶¶ 18, 20), and not of anything 'counterfeit' Plaintiff claims *Defendant* sells.

27.    Denied.

28.    Denied that Defendant sells "Counterfeit Goods." To the extent Defendant sells a novelty product competing with Plaintiff's "UPASStm" registrations, (on which Plaintiff claims no patent), its advertising and packaging do not infringe on any legal rights (trademarks or trade dress) claimed by Plaintiff.

29.    Denied that Defendant sells "Counterfeit Goods." To the extent Defendant sells a novelty product competing with Plaintiff's

product described in its "UPASS™" registrations, (on which Plaintiff claims no patent), its advertising and packaging do not infringe on any legal rights (trademarks or trade dress) claimed by Plaintiff.

30.    Denied.

31.    Denied.

32.    Denied. Again, Defendant sells no "Counterfeit Goods," and its sale of competitive products cause Plaintiff no harm for which Plaintiff might obtain injunctive relief.

33.    Denied.

## V. CLAIMS AGAINST DEFENDANT

## Count I: Federal Trademark Infringement (15 U.S.C. § 1114)

34.    Defendant affirms and incorporates by reference its responses to ¶¶ 1-33 of the Complaint.

35.    Denied.

36.    Denied.

37.    Denied.

38.    Denied.

39.    Denied.

40.    Denied.

41.    Denied.

## **Count II: Unfair Competition (15 U.S.C. § 1125(a))**

42.    Defendant affirms and incorporates by reference its responses to ¶¶ 1-41 of the Complaint.

43.    Denied.

44.    Denied.

45.    Denied.

46.    Denied.

47.    Denied.

48.    Denied.

## **Count III: Georgia DTPA (O.C.G.A. § 10-1-370 *et. seq.*)**

49.    Defendant affirms and incorporates by reference its responses to ¶¶ 1-48 of the Complaint.

50.    Admitted, only to the extent ¶ 50 accurately quotes the content of O.C.G.A. § 10-1-372(a).

51.    Denied.

52.    Denied.

53.    Denied; the only remedy available under the Georgia DTPA is injunctive relief.

## Count IV: Georgia Unfair Competition (O.C.G.A. § 23-2-55)

54.    Defendant affirms and incorporates by reference its responses to ¶¶ 1-53 of the Complaint.

55.    Denied.

56.    Denied.

57.    Denied.

58.    Denied.

59.    Denied.

60.    Denied.

## Count V: Common Law Trademark Infringement and Unfair Competition

61.    Defendant affirms and incorporates by reference its responses to ¶¶ 1-60 of the Complaint.

62.    Denied.

63.    Denied.

64.    Denied.

65.    Denied.

66.    Denied.

67.    Denied.

9

## VI. Plaintiff's "Notice"

68.    Paragraph 68 of the Complaint is not a factual allegation to which a response is required by Fed.R.Civ.P. Rules 7(a)(2) & 8(b).

69.    Paragraph 69 of the Complaint is not a factual allegation to which a response is required by Fed.R.Civ.P. Rules 7(a)(2) & 8(b).

## General Denial

Any factual allegations contained in the Complaint which have not heretofore been expressly admitted are denied.

## Response to VII. Prayer for Relief

Defendant denies that Plaintiff is entitled to any of the declaratory, injunctive, equitable or legal relief sought in its Complaint's Prayer for Relief.

## AFFIRMATIVE DEFENSES

Defendant, pursuant to Fed.R.Civ.P. Rule 8(c), state as avoidance or affirmative defenses:

1.    The Complaint includes Claims for Relief which fail to state claims for which relief may be granted.

2.      The Complaint appears to attribute to Defendant the acts or conduct of third parties, possibly including Plaintiff's own suppliers, for which Defendant had no knowledge or responsibility, actual or vicarious.

3.      Plaintiff's equitable claims against Defendant should be barred by the equitable defenses of laches, waiver and estoppel, as Plaintiff, knowing Defendant's identity, made no effort and took no steps to give Defendant ante litem notice of its concerns, preventing any ongoing harm from anything it perceived or claims Defendant did that might cause Plaintiff legal harm.

4.      Plaintiff's equitable claims are also barred by the adequacy of legal remedies.

5.      UPASS™ and Hot Sacks, the claimed trademark and/or trade dress, are either generic or merely descriptive, with no secondary meaning, and do not give rise to claims for infringement under Federal or Georgia law.

## **COUNTERCLAIM**

Defendant, pursuant to Fed. R. Civ. P. Rule 13(a)(1), brings the following Counterclaim against Plaintiff Safeguard Labs, LLC:

1.    Plaintiff Safeguard Labs, on assignment from its predecessor PhD Marketing, Inc., applied to the USPTO in April, 2021 for registration of a "UPASS" trademark, describing the product as "for use as a laboratory control sample for comparison purposes in the evaluation of a urine sample from a user, and for training laboratory personnel on testing procedures for evaluating urine for composition anomalies and abnormalities and on procedures for the handling of urine for laboratory or research use."

2.    Thereafter, in June, 2021, Safeguard Labs again applied to the USPTO for registration of the "UPASS" trademark, describing the same product as for "Sexual stimulant preparations in the form of artificial urine for recreational use."

3.    The claimed, described uses were false and fraudulent, concealing Safeguard Labs' intended and marketed use: sale of the UPASS synthetic urine product, with enclosed thermometer strip and warming packs, to recreational drug users seeking to avoid positive urinalysis test results. The product is marketed and sold, ultimately, to users who, when tested by employers, regulatory agencies, or law enforcement (including probation authorities), submit the warmed

synthetic urine UPASS product, when tested, instead of their own urine, hoping to avoid disclosure of recreational (but prohibited) drug use. Such sales are prohibited in as many as eighteen states.

4.     Plaintiff's USPTO registration described the purpose of the "goods" in a manner that deliberately misled the USPTO as to the true purpose for which the goods were intended, such that it would have impacted the USPTO's action on the registration, constituting fraud.

5.     Defendant/Counterclaimant Mash Enterprise, LLC, sells a competing product in the novelty synthetic urine market, sold, like Safeguard Labs' UPASS product, via wholesalers to retail outlets such as convenience stores and 'smoke shops.'

6.     As a competitor, Mash Enterprise is within the zone of interest protected by the Lanham Act, and is adversely impacted by Safeguard Labs' fraudulent misrepresentation of its product's use and purpose, which lends to "UPASS$^{tm}$" the aura of legitimacy and efficacy. Mash Enterprise is and will be damaged in its ability to sell its competing novelty synthetic urine products in the same markets by Safeguard Labs' fraud.

7.     The primary significance of Safeguard's registered mark to the relevant public is merely descriptive ('you pass' the drug test) and has no secondary meaning, such that Safeguard Labs is not entitled to exclusive use of the mark.

8.     The registrations at issue are less than five years old.

9.     Under the Lanham Act, 15 U.S.C. § 1119, this Court may order the cancellation of fraudulently obtained registrations.

WHEREFORE, Counterclaimant Mash Enterprises, LLC requests as relief that the Court cancel Plaintiff's fraudulently-obtained registrations 7251516 and 7033644 and award such other relief as the Court finds warranted, including Counterclaimant's reasonable attorney fees and litigation costs pursuant to 15 U.S.C. § 1117(a).

Respectfully submitted this 9th day of July 2025.

BODKER RAMSEY ANDREWS
WINOGRAD & WILDSTEIN, P.C.

Harry J. Winograd
GA Bar No. 770926
hwinograd@brawwlaw.com


*/s/ Robert E. Rigrish*
Robert E. Rigrish
GA Bar No. 605573
rrigrish@brawwlaw.com

14

3490 Piedmont Road, Suite 1400
Atlanta, Georgia 30305

Telephone: (404) 351-1615

Attorneys for Defendant/
Counterclaimant
MASH ENTERPRISE, LLC

## Certificate of Service

I certify that the foregoing Answer, Affirmative Defenses and Counterclaim was electronically filed this 9th day of July 2025 with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to all attorneys of record.

*/s/ Robert E. Rigrish*
Robert E. Rigrish